Good morning. Frank Weiser on behalf of the appellants, police, and the court. The first issue, obviously, to address is the threshold issue of whether the court has jurisdiction to hear the merits of the appeal, as the court had asked for a supplemental briefing. So that's what I'm going to first address. I don't know how clear I was in my supplemental brief, but I do think that the case law that I cited there is fairly dispositive of the issue. And I do believe that this circuit's case law, the United States Supreme Court case law, is dispositive of the fact that this court does have jurisdiction under two alternative theories. The way this circuit appears to approach the issue as to appealability of stay orders, and following the U.S. Supreme Court case law, is that, number one, it is a final order under 28 U.S.C. 1291, or in the alternative, under the collateral order doctrine, the Cohen collateral order doctrine. What about the England reservation, the Confederated Salish case? How do you look at that case? Well, I think that goes to the issue of the collateral order doctrine, and I think that would go to the third prong of that doctrine as to the reviewability, whether there's an ultimate reviewability of the stay order. But I think the cases I cited, the first cases I cited, the Holder v. Holder case, and the Lockyer v. Moran Corp., and especially the Lockyer v. Moran Corp. case, is very, very clear that these type of stay orders are final orders, not necessarily having to be appealed under the collateral order doctrine. Lockyer indicated, based on Moses H. Cohen Memorial Hospital case, and the case that was cited in that U.S. Supreme Court case, the Idelwhite case, that what you look at is the stay order itself, whether the stay order itself effectively puts the litigant out of court, out of the Federal court. So Lockyer also said that the propriety of the stay in that case was unreviewable on appeal. So is the district court's decision that it would abstain under Younger, is that decision unreviewable on appeal? So it stayed, it retained the damages claims. The other issues, declaratory and injunctive relief, went to the state court. So the state court completes its ruling. Your client goes back to Federal court to ask for its consideration on damages. Could we then, could you then challenge the propriety of the Younger abstention on appeal? No, I don't believe so. And I believe that, well, I believe the cases that were cited by the appellees were cases where there was a dismiss, a refusal to dismiss under Younger, and therefore that was reviewable ultimately, even if the state court proceedings finished, even if the judgment was now entered in the Federal court. Because at that point, if there was a mistake made by the district court refusing to dismiss, then that could be corrected by a court of appeals. But I simply don't see how a stay order is going to be corrected in a final judgment from a Federal court that has stayed the matter. The stay, what Lockyer says is you look at the stay order. You don't look at the proceedings necessarily what comes back to the Federal court, but whether the stay order itself effectively places the litigant out of court. And it seems to me that it does. There is no way I can conceive of that that stay order is going to be reviewable. It's moot. At the point that it's been stayed and now the state court has already proceeded, what effective relief can a, can this court, a court of appeals, give to somehow remedy that? In the cases that were cited, there was relief that could be given, easily, because if the district court refused to dismiss under Younger, that that was a mistake. That was a mistake. That could then be corrected because then the judgment by the district court could be reversed. But I simply don't see how the stay order is going to be reversed. So the preclusive effect, so there's a stay. It goes to the state court. The state court makes its decision. And those decisions we've held or the Supreme Court has held may have some preclusive effect, notwithstanding the England reservation. I think it does. And I cited a case, it's out of the takings area in this circuit, the Dodd-Hood case, where clearly England reservations, at least the Supreme Court has not decided, but this circuit and other circuits seem to have been fairly concluded that England reservations only prevent claim preclusion, but not issue preclusion. So, you know, the traditional state court way of calling it collateral estoppel versus res judicata. But collateral estoppel or issue preclusion is a very drastic doctrine. What a 42 U.S.C. 1983 suit allows, or at least contemplates, I think what Congress has intended, is that there would be a de novo hearing. That is why there is no abstention, there is no exhaustion of administrative remedies in the section 1983 suit. Somebody comes to a federal court, they're expecting that they're going to get a de novo hearing, both on the facts and the law. And so just doing an England reservation is not enough. At the termination of the state court proceedings, all in effect, if the state court finds, which it has already, there has not been a final judgment in this case, but if it finds that they want to put in a receiver, which they have done here, if they find ultimately that the property was a nuisance, that would preclude many of the claims. Also, because, for example, if in fact there were, a federal court is allowed to hear the takings claim, and that's up now obviously before the U.S. Supreme Court in the Nick case, but even due process, procedural due process, effectively that case, claim is over. If you cannot litigate, if the merits, the underlying factual issues are now decided, you are very drastically limited in your claims before the court. So assuming we do have jurisdiction, which is obviously an issue, what about the Gilbertson case? Well, the Gilbertson case, and I don't think this circuit's case law is very clear, at least to me it seems that there's some confusion left. The two main cases that I could find, and I think were cited by the appellees, were en banc cases in this circuit, the Gilbertson case and the Green versus City of Tucson case. And City of Tucson, I believe, was decided, was written by Judge Reimer. But in that case, the court, the en banc court found that for purposes of the middle sex factors, for purposes of younger abstention, there would have to be one other factor that this circuit added to that, and whether it directly affected the state court proceedings or directly interfered with the state court proceedings. And then in Gilbertson, this court or the en banc court indicated, no, that's not the case, it would be the practical effect of whether it somehow interferes or enjoins the state court proceedings. What I thought was interesting, Green versus Tucson clearly stated in the alternative that parties who are not parties to the state court proceedings are not precluded from litigating. Younger just simply doesn't apply to non-parties to the proceedings. That came out of this en banc court in Green versus Tucson. I did not see anything in Gilbertson that limited that principle. And the district court in this case cited an unpublished district court decision by Judge Snyder. And I believe that decision that was cited indicated that there was a, if you'll believe the district court decision, Judge Snyder indicated that in that case there were parties who were not parties to the state court proceedings. And Judge Snyder, in fact, said just the opposite of what the district court in this case said. Judge Snyder found so there's a question about whether some of the parties like the district court in this case, if they were to intervene in the state court proceedings so that they could litigate their claims. But wouldn't their, if they carried out, if they went further with their First Amendment claim or their FHA claim or whatever, and the court ruled that in fact the notice to abate and notice to vacate were wrong, that the state court had done something wrong with their procedure, wouldn't that have an effect of interfering with the state court proceedings regardless of whether they were directly named in the nuisance suit or not? I didn't hear. I truly apologize, Your Honor. I didn't quite hear you. Okay. I'm asking whether going forward by any parties with the claims against the city would have an effect or interfere with the decision-making process of the state court regardless of whether Mona Herrera and her children were named in the nuisance suit or not. I don't see how that would be, certainly not as to some of the claims. For example, the Fourth Amendment claim. In a public nuisance action here in California, none of these constitutional claims really have any effect on the public nuisance issue. It's a quasi-in riem action. And the only question really that the court decides in the state court is does this have an effect on the state nuisance action? I mean, it's a strict liability statute. And all these constitutional defenses really wouldn't go anywhere. So the First Amendment claim in your complaint, in the complaint, indicates or argues that the city had used the wrong procedure in attempting to get hold of the hotel. I mean, that does seem like it would have an effect on the state nuisance action. There's a case out of this circuit, Serrano-Gascos v. Morgan, which basically says that if somebody is petitioning an administrative agency or city and close in time to that petitioning activity or speaking out at, let's say, a city council hearing, that there is some then adverse action taken by the municipality that raises an inference of retaliation under the First Amendment under the petition clause. That's what I thought our First Amendment claim is about, not the procedure. Although we did argue that the initial warrant was facially defective. That's what I'm looking at. And that's the Fourth Amendment claim. Well, this says, paragraph 32, according to my notes, the city has failed to provide plaintiffs or whole motel tenants with an appeal hearing of the notice to evade a notice to vacate. So it seemed like a procedural claim. But that would not affect the nuisance proceedings for the simple reason that as a civil proceeding, the federal exclusionary rule simply does not apply. And I cited, I believe in my brief, a California Supreme Court case, even though it's not decided by this circuit, but I think it's persuasive, to the effect that civil proceedings, the federal exclusionary rule simply doesn't apply. So fine. There's a Fourth Amendment violation. The warrant's defective. Some of the evidence is gathered defectively. But that's not going to exclude that evidence from the proceedings. There may be a damages claim for it, and that might be a personal damages claim, but it's not going to affect the proceedings. As to the claim against the city and county, did you make out a Monell hearing? Yes, I believe I did, Your Honor. I did. I did. And what about the Fair Housing Act claim? Did you allege disparate impact on persons of Hispanic and Hawaiian-Filipino origin? Yes, I did. There were a lot of poor people who were living at this property, and I understand and I'm sensitive to the city's concerns about the code enforcement issues. But there were a lot of poor people here. There was certain procedural, I thought, really aberrant behavior by the city,  and this circuit has decided, although I believe it's a circuit split, it's never been obviously brought up before the U.S. Supreme Court yet, but there's a case out of this circuit back in the early 1990s, Conner v. City of Santa Ana. It was authored by Judge Beezer. And in that case, the city of Santa Ana found the property to be a public nuisance. A city investigator went onto the property without a warrant, and the argument was, well, it doesn't matter, because the city council had authorized that investigator to do so, and it was a nuisance property, therefore it did not require a warrant. This circuit said even a property that's deemed to be a public nuisance requires, under the Fourth Amendment, to have a warrant. Other circuits say differently. The Fifth Circuit says differently that the city council, by following its procedures and giving the authority to an investigator, in effect is the substitute for a warrant. But this circuit's case law, as it stands now under Conner, is that the Fourth Amendment required that before they shut down that property, they get a warrant from the court, that it be reviewable by a court. Do you want to save your seconds for a rebuttal? Okay. Thank you very much, Your Honor. Okay. Thank you. Good morning, Your Honors. My name is John Fuji. I'm here representing Appellee City of Palmdale. I know we have 15 minutes to argue combined, so I am taking the first 10 minutes, and counsel for the County of Los Angeles will be taking the last five minutes. Please watch the clock because if you talk too long, you'll deprive your co-counsel. I will. But thank you for reminding me, Your Honor. I just want to touch on, firstly, on the jurisdiction issue. I believe that the court was right to request supplemental briefing on the jurisdiction issue because I do believe jurisdiction is at play, and more importantly that the court here lacks jurisdiction. Jurisdiction for appellate review in federal courts is very limited outside of the final judgment, and that makes sense because you don't want piecemeal appeals. And here, obviously, we don't have a final judgment, and what's important here is that the district court has, in fact, retained jurisdiction over the district court case and has even went as far as requesting 90-day status reports from the parties on the progress of the state court action. Of all of the cases that I saw, we will review a younger abstention order determination. None of them are in this posture where the district court followed Gilbertson and stayed the damages claim. I didn't see any case in our circuit directly on point. And so the question is, the challenges to whether the district court was correct in abstaining under younger, is that an issue that we could review later on appeal? So the state court goes off and does its thing. It makes decisions. It reaches its conclusions. The petitions go back into district court. Could we review at that point, after the district court makes its decisions, the propriety of the younger abstention order? And if so, what relief could those parties get at that time? Yes, I believe you can, at the end of the case, review the propriety of the younger abstention order. So we say the younger abstention order was wrong. Can we unravel the state decision if it has preclusive effect? Well, I don't know if you could unravel it. We couldn't. It would continue to have a preclusive effect on the district court's decision, correct? To the extent there are issues decided that have a preclusive effect. But here in the federal court action, plaintiffs' appellants have pled a multitude of constitutional violations, from the Fourth Amendment to the Fifth Amendment to the Fourteenth Amendment, substantive and procedural due process to the contract clause claim, in addition to their Fair Housing Act claim. So there will not be a lot of overlap. But there will be some. So some of the cases, some of the issues will be affected by the state court ruling. Some of the factual issues will be. And then even as to the constitutional issues, say an excessive force claim, assuming that the complaint was bringing one, that doesn't seem to be affected by the state court proceeding. If we decide that the district court erred in its younger abstention, what relief could we give to the petitioner at that point on the Fourth Amendment issue? Younger abstention ruling was wrong, but two years are past. What do we do at that point? Right. There would be no preclusive effect. So there's no relief, right? There's no relief that we could give. Damages. For what? For the younger abstention. Your Honor said for the damages for the Fourth Amendment claim. Right. But if the younger abstention decision was wrong, what would our ruling, what effect would our ruling on that have for the petitioner? Well, the case would come back to the district court after the state court proceeding has resolved. And the district court could have a rule and have a jury trial on the Fourth Amendment claim. And then the result of the Fourth Amendment claim, the petitioner is dissatisfied, he appeals, and one of the appeals is of the younger abstention ruling. And what relief could we give on that? Well, I think that's the thing here, Your Honor, is that there is no prejudice with this abstention ruling. If I understand right, unless we can review the younger abstention ruling now, there's no relief we could give. So it's effectively unreviewable on appeal. No, I think it is reviewable on appeal. What relief could we give on appeal? You could, we would just go back to where we are in the district court case. Yeah, but there's a lot of water under the dam that has come out of the state proceeding at that point. Can we simply nullify the state proceeding at that point, ignore it? I don't think you could nullify the state proceeding, but you – Well, the point is, if I understand Judge Akuta's question, the time to decide whether it was proper to abstain should be now, before it goes back to the state. Why doesn't that make sense? Because here there was a stay of the case as opposed to a complete remand. What difference does that make? Appellants are not effectively out, are not effectively out of Federal court, as they are in the case's site. But all they did was stay for the damages claim. Isn't that right? They did stay for the damages claim. But that's it. They remanded everything, or rather they abstained and let it go back to the state for the rest. Well, the rest was, the rest was whether or not plaintiffs should be, they had an injunctive relief on whether or not they should close the motel and plaintiffs should be kicked out of their residence, evicted from the residence of the motel. But that's precisely the point. If it was an error to abstain, why can't we look at that error right now rather than waiting months and months, maybe several years while the State does its proceeding and then comes back to the district court and then comes back up to us on the issue of whether or not they should have abstained in the first place. Why can't we do it now rather than two years from now? Because then you're running, you run the risk of inconsistent rulings between the what's going to happen in the State court and the Federal court. If you have, if you're running parallel tracks of whether. But we're looking at whether the younger abstention was wrong. That's the only issue that would be reviewed on appeal. If the younger abstention was wrong, then the petitioner gets to go forward in district court and make his claim. I mean, Sprint, the Supreme Court in Sprint says normally the plaintiff gets to choose the form and can bring its claims in Federal court. So I'm not sure, and alternatively, if the district court was correct in abstaining, then the State court gets to proceed first. So I'm not sure what the problem is in deciding that issue now just as we do for Pullman abstains pursuant to Pullman abstention. I think Pullman's a little different because in Pullman abstention, the Federal court abstains because there's an unsettled issue of State law that may preclude deciding issues of Federal constitutional issues. So the State court ‑‑ It's different, but there's still, there's an extensive overlap here with the State court issues, with the Federal court issues. I just think there's a, I think there's a distinction between Pullman abstention and younger abstention. There's a distinction, but the argument you're making would seem to be equally applicable, that the State is not, it's not final order and there's a, the court will hear Federal claims, of course, subject to whatever was decided in the State court. Isn't that the situation we have here? Yes, but I think the key is here that the court has retained jurisdiction and allowed plaintiff appellants to come back on their damages claims. That's where I think the distinction lies. What's your view on the Salish, Confederate Salish case? Yes, so Confederated Salish, I think the issue was whether or not the court, I think the issue in Federated Salish, there was a, there was a denial of younger abstention and Pullman abstention. Here I think the issue is very similar because I think that plaintiffs are not effectively out of court because of the court retaining jurisdiction and staying in the damages case. Did you want to speak to your co-counsel? Just briefly on the, on the abstention, the substantive abstention issue. I think that the whole purpose of abstention is to prevent inconsistent rulings in the State and Federal court. And I think the Federal district court was absolutely correct in abstaining and I think all the middle sex, middle sex factors apply. And in fact, I think. Can, can Mona Herrera and the children, could they raise their, their claims in the State, in a State nuisance proceeding? Sure they can. They can intervene and I think they're. Saying that they have authority as interveners, they meet the intervener requirements. Right. And I think there was, we cited a Supreme Court case, Hicks versus Miranda. Are the officials, the individual officials, dependents in the nuisance action and could they be sued in the nuisance action? They could, they could definitely cross-claim. Are the officials part of the nuisance action? So in other words. The State court action? Yeah. No, the State court action was just brought on behalf of the City. I'm going to, I'm going to relinquish the rest of the 15 minutes to my co-counsel.  Thank you very much. Good morning, Your Honors. Ashley Clark on behalf of the County of Los Angeles. I know that the court had asked a specific question as to the application of Younger and its review here. I believe that the relief that's requested by the plaintiffs is important. They are not only asking for damages as it relates to the 1983 and 3604 claims, but are also asking for an injunction to stop the closure of the motel and to keep the plaintiffs from being roughly kicked out of their personal occupants. That has already actually been, it's already occurred in this case. So your view as it relates to Younger would effectively enjoin the State from using its own police powers to use those nuisances. You say your view. I'm not sure what you mean by that. I'm sorry? When you say your view. Your review. If your review of Younger at this point, and abstention in this matter would have any effect on the State claim. I do believe that it has or will because the State has already effectively closed the motel and moved the plaintiffs out of their personal residence. So if there was a review now where you found that abstention is not proper, an injunction would somehow be allowed by the district court. That order by the district court would enjoin the State action. They would effectively ask them to rewind, open the motel back and allow the plaintiffs back in their personal residence. Now we don't know even what the condition of the property is at this point. So I don't know if that's even possible. I just wanted to point that out to you. I do agree with Mr. Fuji that there is no jurisdiction. I'm not sure, what point are you making that that would be unlawful, improper, not violate the State's rights? I'm not sure what point you're making. Sure. The question that was asked, at least to my understanding, by Your Honor, was whether the review of the application of Younger right now would have any practical effect on the State issues. And I believe, based on the request that they, excuse me, the prayer that's asked for by the district court complaint, which effectively asks the district court to review the application of Younger right now and ask the district court to enjoin the closure of the motel, to stop the closure of the motel, and to allow plaintiffs to stay in their personal residence rather than moving them or evicting them from the property, would have a practical effect to do that. Would that be true for all of the issues that they raise in their complaints? So, for example, to the extent they're raising a Fourth Amendment excessive force claim, would that have a practical effect of enjoining the State proceedings? Honestly, Your Honor, I don't know, based on the facts that are presented now. We haven't done any factual discovery in the case. So based on the sort of limited pleadings that we have available to us, it is unclear at this time if the nuisance is declared on the property that it would have any force and effect as to the Fourth Amendment seizure claim. Supposed we reversed, suppose we were to take this and reverse on the Younger abstention, what impact would that have? Well, it would effectively say to the State and the county as the police power of the city of Palmdale that they do not have the power to utilize their own municipal codes in order to ensure the safety of the occupants of the city. Do we have jurisdiction to decide that? I don't think that the appeal, I don't think you have jurisdiction to decide the appeal. I don't think that issue has been brought up by plaintiffs and is not before the court at this time. Unless you have any questions, I only have four seconds. I thank you for your time. It's a pleasure to be here today. You have a few seconds left for rebuttal. Very quickly, Your Honor. The case that I wanted to cite that Judge Fitzgerald had cited, Judge Snyder's unpublished decision. Her decision dealing with third parties, which is the district court order says at page 10, because younger abstention does not apply unless the federal claimant is a party in the state proceeding, see Benavidez v. U. 34F3825832, 9th Circuit, 1994. That case was affirmed in the en banc decision in the Green v. Tucson, city of Tucson case, that third parties are simply not limited by the younger abstention doctrine. And I think there are two conceptual issues here. One is the dismissal of the injunctive relief and the other is the stay of the damages claim to go forward. And the third party is having a right at least to go forward on their damages claim. Quackenbush, which took a remand order and treated it and found that there was jurisdiction to hear it as an appealable order, as if it was an abstention stay order, indicated based on the Moses H. Quote, we first concluded that the abstention-based stay order was appealable as a final decision under section 1291 because it put the litigants, quote, effectively out of court, citing Idlewhite, and because, and this I think is important, there's an additional point. It's effect was precisely to surrender jurisdiction of a federal suit to a state court. So even if it's a temporary surrender, which it is on the damages claim in this case, that's precisely a final order. Okay. I think we have your argument. Thank you. The case of Herrera v. City of Palmdale is submitted.
judges: O'scannlain, Ikuta, Steeh